**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11cv181**

| | |
|---|---|
| REPUBLIC-FRANKLIN INSURANCE ) <br> COMPANY; and GRAPHIC ARTS ) <br> MUTUAL INSURANCE COMPANY, ) <br> ) <br>        **Plaintiffs,** ) <br> ) <br> Vs. ) <br> ) <br> SCOTT B. PASOUR; and PASOUR AUTO ) <br> REPAIR, INC. d/b/a/ PASOUR AUTO ) <br> REPAIR SERVICE, ) <br> ) <br>        **Defendants.** ) <br> _____ ) | **MEMORANDUM <br> OF DECISION** |

**THIS MATTER** is before the court on the Memorandum and Recommendation (#17) (hereinafter "M&R") of Honorable David C. Keesler, United States Magistrate Judge, the defendants' "Joint Objections of Defendants to M&R Recommending Denial of Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(7), and (19)" (#18), and plaintiffs' Reply to Defendants' Objection (#19). It appearing that briefing of the objections is complete, defendants' objections are ripe for consideration in accordance with Rule 72(b), Federal Rules of Civil Procedure.

**FINDINGS AND CONCLUSIONS**

**I.    Background**

While defendants have objected to Judge Keesler's legal conclusions, review of the pleadings reveals that no objections have been made to the factual background set forth by

-1-

Judge Keesler in his M&R. Such factual background is, therefore, accepted, summarized, and to a certain degree expanded herein to aid further review.

Plaintiffs filed this action seeking declaratory relief on April 14, 2011, the same day defendants filed their action in state court. Brought under 28, United States Code, Section 1332, plaintiffs seeks declaratory relief under Section 2201 as to the

> rights and obligations of each company under policies of insurance issued to Pasour Auto Repair Service, Inc., with respect to their duty to provide underinsured motorist coverage to Scott B. Pasour.

Complaint (#1), at 2.

Underlying both this action and the state court proceeding is a traffic accident in which defendant Scott B. Pasour (hereinafter "Mr. Pasour") was allegedly injured while test driving a customer's car in the course of his employment at Pasour Auto Repair Service, Inc. While defendants herein did not originally assert a claim against plaintiffs in the state court action, such defendants (as well as Mr. Pasour's spouse) have, subsequent to the issuance of the M&R, amended their the state court action to include claims that mirror the claims asserted by plaintiffs in this action.[1]

In the parallel action now pending in the North Carolina General Court of Justice, Superior Court Division, for Gaston County, Mr. & Mrs. Pasour allege claims for negligence, personal injury, and loss of consortium, and they seek a stay of that action while they submit a claim for arbitration. Id. On August 5, 2011, they further amended their First Amended Complaint to assert claims against the plaintiffs herein, IGO, IGO-NC (IGO's parent

---

[1] The court notes plaintiffs' concerns with such state court amendment.

corporation), Utica National Insurance Group, Utica Mutual Insurance Company, Pasour Auto Repair, Inc. (a North Carolina corporation),[2] and North Carolina resident, David Baker. Defendants in their Objections state that the state court complaint now seeks not only a declaration of the rights between the parties named by plaintiffs in this action, but also includes all the interested parties for complete resolution of all issues that have arisen as a result of the traffic accident.

**II.     Recommendation as to Defendants' Motion to Dismiss**

In moving to dismiss, defendants argued that Utica National Insurance Group, IGO Insurance Agency, Inc., and David Baker were "all necessary and indispensable parties to the present action . . . but their joinder would destroy this Court['s] subject matter jurisdiction." Motion to Dismiss, at p. 2. Thus, defendants' argument centered on Rules 12(b)(7) and 19, Federal Rules of Civil Procedure, and Judge Keesler's discussion ably rejected such arguments, finding that the parties defendants contended were necessary for complete adjudication of this action were not, in fact, necessary as: (1) complete relief could be afforded among the named parties without joinder; and (2) defendants had not shown that the absent persons' ability to protect their own interest would be impaired, or that the existing parties might be subject to the risk of multiple or inconsistent obligations. M&R, at pp. 8-9. In reaching such conclusion, Judge Keesler relied on the persuasive decision of the District of South Carolina in Nationwide Mutual Ins. Co. v. Ruff, 2011 WL 2491345

---

[2]     Plaintiffs have also pointed out that defendants' counsel herein has created a conflict of interest by naming one of the parties they represent as a defendant.

(D.S.C. June 22, 2011).[3] In that decision, the district court resolved a similar Motion to Dismiss, which was also made under Rules 12(b)(7) and 19, and Judge Keesler's recommendation is ultimately consistent with the Nationwide court's resolution of those motions. While Judge Keesler's resolution of the Rule 12(b)(7) and Rule 19 motions presented are patently correct, unlike the court in Nationwide, Judge Keesler did not reach the Nautilus factors, which are pivotal in considering whether to retain a Section 2201 action in federal court.[4]

Application of the Nautilus factors was raised for the first time by defendants in their objections. Objections (#18),, at p. 8. As plaintiffs have argued the Nautilus factors in their Reply to Defendants' Objections, see Reply (#19), at p. 4, the court will now consider such factors *de novo.*

### III. *De Novo* Review

The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with."

---

[3] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

[4] The court does not in any manner fault Judge Keesler for not reaching Nautilus as neither defendants nor plaintiffs either raised or addressed Nautilus in the briefing underlying the M&R.

-4-

Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the court has conducted a *de novo* review of those portions of the recommendation objected to as well as a careful review of the Judge Keesler's M&R in its entirety.

While defendants have objected to Judge Keesler's recommendations as to the disposition of their Rule 12(b)(7) and 19 motions, such objections either repackage arguments made in their earlier brief or attempt to seek reconsideration in light of the post-recommendation amendments defendants made to their pleading in state court. After *de novo* and careful review of such recommendation the court will affirm Judge Keesler's disposition of *those* particular motions.

As the objections have correctly recognized that the Nautilus factors must be considered in determining whether a court should exercise its discretion in allowing a Section 2201 action to proceed in the face of an ongoing state action, the court will now turn its focus on consideration of those factors.

**IV.  Standard Applicable to a Motion to Dismiss a Section 2201 Action**

The filing of a declaratory judgment action under 28, United States Code, Sections

-5-

2201-2202, does not in and of itself confer jurisdiction. Schilling v. Rogers, 363 U.S. 666, 667 (1960); Delavigne v. Delavigne, 530 F.2d 598, 601 (4th Cir.1976). Instead, a district court may entertain a declaratory judgment action before it where the claim amounts to a "case of actual controversy" within the court's diversity jurisdiction. Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir.1994), *overruled on other grounds*, Wilton v. Seven Falls Co., 515 U.S. 277 (1995). The Court of Appeals for the Fourth Circuit has held that a

> declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." It should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." **The Supreme Court explained that, when a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court."** This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding...."
> 
> Guided by these general principles--as well as "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts"-- the Fourth Circuit has set forth a number of specific factors for district courts to consider. These include: (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law" [; and (iv) ] whether the declaratory judgment action is being used merely as a device for "procedural fencing"--that is, "to provide another forum in a race for *res judicata*" or "to

-6-

achiev[e] a federal hearing in a case otherwise not removable."

Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256-57 (4th Cir. 1996)(citations omitted; emphasis added). In Wilton, supra, the United States Supreme Court reaffirmed Brillhart v. Excess Ins. Co., 316 U.S. 491(1942), where the district court dismissed the action because of ongoing state litigation. According to the Wilton Court, the proposition in Brillhart that was reaffirmed was

> where another suit involving the same parties and presenting opportunities for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed.

Wilton, supra, at 283 (citation omitted). The Wilton Court concluded that the district courts possess wide discretion in making these decisions holding as follows:

> [c]onsistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

Id., at 288. The appellate court recognized that to whatever extent its decisions implied further restrictions on district court discretion in determining whether to exercise jurisdiction over Declaratory Judgment Act cases, such decisions must yield to the clear decision of the Supreme Court in Wilton. Centennial, supra, at 257-258.

**V.    Discussion**

    **A.    Introduction**

Clearly, as Judge Keesler ultimately determined, this court has diversity jurisdiction

-7-

over plaintiffs' claims and the Western District of North Carolina would be an appropriate venue for this declaratory judgment action to be resolved. This court is also unconvinced that defendants' insurance agent and the insurance agency where they purchased the commercial policies are necessary for just adjudication as to what the terms of such policy provided. Indeed, this court views the insurance agent and the agency as potential witnesses rather than potential third-party defendants to this action, whose testimony as to the coverage they represented was provided by the policy they sold can easily be secured under Rule 30, Federal Rules of Civil Procedure.[5] Judge Keesler's determination of the issues then before him was sound and completely consistent with this court's view as who is a necessary party for complete adjudication.

Under prevailing case law, the correct issue (which defendants should have raised for the first time in their Motion to Dismiss rather than in their Objections) is whether this court should, in its discretion, exercise its jurisdiction by adjudicating this Declaratory Judgment Action or whether such should yield to considerations of practicality and wise judicial administration. Wilton, supra. While such issue has been presented in a haphazard manner, it appears that both parties have now had an adequate opportunity to brief and have in fact briefed the issue for the court. As Section 2201 does not confer jurisdiction, review of case law reveals that this court has an affirmative obligation to consider its jurisdiction at all points in the litigation, especially where, as here, such exercise involves a discretionary

---

[5] Whether such testimony would be admissible or inadmissible as parole evidence is not before the court.

determination.

Inasmuch as an action brought in this court under the Declaratory Judgment Act may run head long into ongoing state court actions, federal courts must affirmatively exercise discretion in determining whether to allow the federal action to proceed. This is true even in cases such as this where, as Judge Keesler properly found, the suit otherwise satisfies the requirements of federal subject matter jurisdiction. Id., at 282; Aetna Casualty and Surety v. Alpha Mechanical, Inc., 9 F.Supp.2d 585, 587 (W.D.N.C. 1998). "[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial…." Wilton, supra, at 288.

When deciding whether to allow the continuation of a federal action which parallels a state court proceeding, courts consider "whether the controversy can better be settled in the proceeding pending in the state court." Centennial Life Insurance Company v. Poston, 88 F.3d 255, 256 (4th Cir. 1996). The overriding concern is whether "the claims of all parties in interest can satisfactorily be adjudicated in [the state court] proceeding…." Wilton, supra, at 283.

As mentioned above in discussing the applicable standard, the Supreme Court has specifically cautioned that where there is

> another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed.

Id. (citation omitted). Inasmuch as discretion is not, by its nature, capable of being

quantified or limited to rote inquiries,[6] see Centennial, supra, the threshold inquiry is aided by consideration of a number of specific factors. See Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994). These factors, known as the Nautilus factors include:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the issues raised in the federal actions can more efficiently be resolved in the court in which the state action is pending;

(3) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and

(4) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable.

Id., at 257 (citations and corresponding quotation marks omitted). The court will consider each Nautilus factor *seriatim* and use such factors as a framework in determining whether to exercise discretion in favor of retaining the action.

### B. The First Factor: North Carolina's Interest in the Subject Matter of this Declaratory Judgment Action.

The first factor is the forum state's interest in the subject matter of the declaratory judgment action pending in federal court, which is the coverage provided by two commercial policies of insurance. North Carolina has made most clear its interest in the legal relationships that develop from insurance policies:

---

[6] The court also notes that Article III discretion is difficult if not impossible to delegate, making the recommendation process under 28 U.S.C. § 636 awkward.

> Generally, an insurance contract "is subject" to the law of the state where the contract was entered. All contracts of insurance on "property, lives, or interests" that have a close connection with North Carolina are deemed to have been entered in this state.

Fortune Ins. Co. v. Owens, 132 N.C.App. 489, 492 (N.C. App.1999)(citations omitted). Review of the Complaint in this action reveals that the contracts of insurance were entered into with the corporate defendant in either the corporate name or the name under which it was doing business and plaintiff further alleges that such corporate defendant is a North Carolina corporation. Thus, North Carolina would likely deem that such policies were entered into in North Carolina. Id.

While plaintiffs discuss in their reply the fact that the commercial policies of insurance involved in this case do not concern "novel" issues of state law, Reply (#19), at p.5, novelty is not a Nautilus factor and it is the state's *interest* in the subject matter which must be considered. As provided in the state's long-arm statute, North Carolina has a substantial interest in the execution of contracts within this state, promises of services to be rendered in this state, solicitation of business within the state, and goods or intellectual property being licensed or sold to corporate residents of the state. See N.C.Gen.Stat. §§ 1-75.4(5)(a), *et seq*. Thus, not only does North Carolina have a general interest over enforcement and interpretation of contracts of insurance, North Carolina has made clear its interest in the execution of contracts within this state. This factor weighs heavily in favor of dismissal.

### C. The Second and Third Factors: Judicial Efficiency and Court Entanglement.

Clearly, the declaratory relief sought in this action could well be obtained by the

parties in the state court action, notwithstanding defendants' procedural missteps is state court which plaintiffs have outlined in their Reply. Indeed, this court assumes that Rule 15 in state court is just as pliant as its federal analogue, as the procedural missteps of counsel would not enure to the detriment of the client.

In considering judicial efficiency, the court not only considers the costs to the taxpayers in providing two forums to resolve issues raised as a result of one motor vehicle accident, but the costs to the parties in simultaneously proceeding in two *fora*. See Fed.R.Civ.P. 1. By bringing this action in federal court rather than in the state proceeding, the costs for the litigants have dramatically increased. While plaintiffs are, without doubt, capable of funding this action, the court takes notice that the defendants are running what appears to be an independent automotive repair shop and that the individual defendant is likely of modest means.

While the pleadings focus on the timing of these actions and the fact that defendants only filed their Second Amended Complaint after Judge Keesler pointed out the deficiencies in the First Amended Complaint, Nautilus does not focus on the timing of actions, but whether courts are being asked to decide issues *ad hoc*. In the context of Nautilus, judicial efficiency means the efficient use of *all* court resources, be they state or federal, and common sense counsels against this court deciding the issue of coverage when a state court can resolve all issues arising from this singular traffic accident.

Piecemeal litigation is particularly draining on scarce judicial resources. In Hartford Casualty Insurance Company v. BB&T Financial Corporation, 131 F.Supp.2d 752 (W.D.N.C

2001),[7] the district court held as follows:

> [t]he second and third [Nautilus] factors, along with the prohibition against trying a controversy by piecemeal, are particularly salient. While it is true that this Court could efficiently adjudicate the rights and responsibilities between [the parties to this action], the rights of all of the parties involved in the underlying dispute can be resolved in the single action now pending in South Carolina state court.

Hartford, supra, at 755 (emphasis deleted). The district court in Hartford further found that dismissal was appropriate as

> the South Carolina action would nonetheless have to continue to determine the rights of the other parties. By staying this proceeding, the Court can avoid unnecessary entanglement of the State and Federal courts in this matter. Judicial resources—arguably in each system—would be most efficiently allocated by allowing the South Carolina state court the opportunity to determine the respective obligations of all of the insurers with potential liability stemming from the [association's] lawsuit.

Id. If this court were to retain this action, it is likely that an appeal would be taken of any declaratory judgment decision to the Court of Appeals for the Fourth Circuit. Such could take years to resolve and it appears that such could well interfere with the state court's resolution of its action.

Finally, under this factor, the court has considered federalism, which is the sharing of power and authority between the national and state government. Although discussed in the context of a federal challenge to state criminal law, the Supreme Court has clearly set forth the limitations of federal court action based on federalism in Younger v. Harris, 401 U.S. 37

---

[7] While the decisions of colleagues at the district court level are not binding, the court finds them most helpful.

(1971):[8]

>Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts.
>
>* * *
>
>The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act . . .when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. The doctrine may originally have grown out of circumstances peculiar to the English judicial system and not applicable in this country, but its fundamental purpose of restraining equity jurisdiction within narrow limits is equally important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted. This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as 'Our Federalism' . . . . What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

Id., at 43-45.

In considering whether this court should exercise its discretion in favor of proceeding with the declaratory judgment action, the court has considered federalism and concludes that if it were to proceed with this action it would unduly interfere with legitimate activities of

---

[8] Younger is cited *only* for its explanation of federalism, not abstention.

-14-

the state, which include interpretation of contracts of insurance and the state court's ability to promptly move from verdict and enter a judgment. Such a result would clearly not be in keeping with the "manifested . . .desire [of Congress] to permit state courts to try state cases free from interference by federal courts." Id.

Thus, considerations of judicial economy, efficiency and federalism weigh heavily against this court's hearing of the declaratory judgment action.

### D. The Fourth Factor: *Res Judicata*.

The fourth factor requires consideration of whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable. Unlike intellectual property litigation, where the race to the courthouse is paramount, Genentech, Inc. v. Eli Lilly and Co., 27 U.S.P.Q.2d 1241 (Fed. Cir. 1993), *abrogated on different grounds*, Wilton, supra, little significance under Nautilus is given to which case is filed first. Centennial, supra, at 258 ("although the federal action was filed first, we decline to place undue significance on the race to the courthouse door...."). Finally, there is no indication in the pleadings that plaintiffs filed this action to gain an advantage or that they have engaged in procedural fencing. Indeed, it appears that the state action and federal action were filed the same day, making this factor neutral.

## VI. Conclusion

The filing of this action was perfectly reasonable and understandable inasmuch as plaintiffs have a real interest in a determination of their obligation under the policies of

-15-

insurance they issued. Plaintiffs have not, however, shown that this issue cannot be resolved in the action now pending in state court or that it would be more efficient for all concerned for this court to resolve the issue. Indeed, if this action continues in this forum, scarce judicial resources will be wasted and costs for the parties will be multiplied. While it is a natural judicial instinct to exercise discretion in favor of jurisdiction, under <u>Nautilus</u> it is not a question of whether a court "can" resolve a Section 2201 action, but whether it "should."

Having used the <u>Nautilus</u> factors as a framework for decision making and having weighed each factor carefully, the court will first **AFFIRM** Judge Keesler's Rule 12(b)(7) and 19 recommendations (#17) as they are fully consistent with current case law under Rules 12 and 19; however, after *de novo* review of issues raised in the Objections and responded to in the Reply, the court will **GRANT** defendants' Motion to Dismiss (#10) in accordance with <u>Nautilus</u> and its progeny and dismiss this action, as well as the counterclaims, without prejudice as to the parties pursuing such claims in state court.

A judgment consistent with this Memorandum of Decision shall be entered by the Clerk of Court simultaneously herewith.

Signed: October 31, 2011

Max O. Cogburn Jr.
United States District Judge

-16-